E-FILED
Monday, 30 July, 2007  12:37:58 PM
Clerk, U.S. District Court, ILCD

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

RON KANE and KAREN KANE,               )
                                       )
          Plaintiffs,                  )
                                       )
vs.                                    )   No. 05-3219
                                       )
THE VILLAGE OF SOUTHERN VIEW, an )
Illinois municipal corporation, JANIE  )
STANLEY, Individually and in her Official )
Capacity, NORA PETROSKY, Individually  )
and in her Official Capacity, The V.O.I.C.E. )
OF SOUTHERN VIEW, INC., an Illinois    )
not-for-profit corporation, JANIS GRAY, )
Individually, WALTER ADE, Individually, )
and LEROY SOLOMON, Individually, )
                                       )
          Defendants.                  )

OPINION

RICHARD MILLS, U.S. District Judge:

The Plaintiffs have asserted six counts pursuant to 42 U.S.C. § 1983,

wherein they allege that the Defendants violated their constitutional rights.

Pending before the Court is the Defendants' motion for summary judgment.

At the end of the day, this Court finds that no constitutional rights of

1

Ron and Karen Kane were violated in this case.  Thus summary judgment is granted to The Village of Southern View, The V.O.I.C.E. of Southern View, Inc., Janie Stanley, Nora Petrosky, Janis Gray, Walter Gray and Leroy Solomon.

## I. BACKGROUND

Plaintiffs Ron and Karen Kane allege that prior to July 12, 2004, a group of citizens of the Village of Southern View, one of the Defendants, began organizing and meeting in opposition to the construction of a structure on the property owned by the Plaintiffs located at 3133 Carman. On April 5, 2005, Defendants Janie Stanley and Nora Petrosky were elected to serve as trustees of the Village of Southern View and were sworn in as such trustees at a Village Board meeting held on May 9, 2005, along with two other individuals who were members of The V.O.I.C.E., one of the Defendants.  The four newly elected trustees had run for office utilizing joint campaign literature which had been produced by Stanley and Defendant Janis Gray.  The Defendants claim this constitutes protected political activity.

The Plaintiffs have pled in Count I that Defendant Stanley was guilty of the following statements, acts and/or admissions:

> On June 1, 2005, Defendant Stanley, while acting individually and as a member of the Board of Trustees of the Village, complained to members of the Police Department of the Village, that Plaintiff Ron Kane was working on cars in his garage and further stated that this was in direct violation of the Court Order issued by the Honorable Judge Robert Eggers . . . Defendant Stanley further stated that 'no one is supposed to work on any cars in that garage unless they were registered to Ron Kane or a family member living there.' Such statements by Defendant Stanley were false and misrepresented the Order entered by aforesaid, acting under color of law and in furtherance of the policy of the Village, acted to deprive Plaintiffs of their rights as aforesaid. A copy of the Police Report marked as Exhibit 'I' is attached hereto and incorporated herein.

The Defendants allege Mr. Kane testified that he has no understanding of any evidence that tends to prove Stanley misused her official power as a Village Board Member in order to effectuate any alleged acts and/or omissions against the Plaintiffs. The Plaintiffs acknowledge this accurately reflects Mr. Kane's deposition testimony; however, the deposition was taken prior to the deposition of the Defendants and prior to the production of documents by the Defendants.

3

Plaintiff Karen Kane agrees that Stanley could have believed she was acting as an individual, as opposed to a Village official, when she reported to the police about Plaintiffs.  Even though Stanley was a Village Board Member, Stanley could do things as an individual and not as a Village Board Member.  The Defendants allege that Ms. Kane has not identified any admissible evidence that tends to prove Stanley misused her official power as a Village Board Member in order to effectuate any alleged acts and/or omissions against Plaintiffs.  The Plaintiffs acknowledge this accurately reflects Ms. Kane's deposition testimony, but make the same objection as previously noted.  The Defendants further contend that during the deposition, the Plaintiffs did not ask Stanley any questions to attempt to establish that Stanley misused any power, possessed by virtue of law, or to establish that Stanley was able to act as alleged only because she was clothed with the authority of law.  The Plaintiffs dispute this allegation, noting that Stanley was questioned regarding whether she directed individuals to take pictures of the Kanes' property or whether she herself took pictures of their property.  The Plaintiffs further assert that they

4

questioned Stanley regarding her involvement with passage of the amendment to a certain ordinance banning automobile sales and services in residential districts in the Village and her reasons for doing so.

The Plaintiffs have pled in Count II that Defendant Nora Petrosky was guilty of the following statements, acts and/or omissions:

> Pursuant to the Narrative Report of the Police Department of the Village, the Reporting Officer interviewed Defendants Solomon and Ade who advised that Defendant Petrosky, a Village Board member, had advised them to take pictures of the activities going on in the Plaintiffs' private garage. A copy of the Police Report marked as Exhibit 'J' is attached hereto and incorporated herein.

> Defendant Petrosky, acting in her individual capacity, acting aforesaid under color of law and in furtherance of the policy of the Village, conspired with Defendants Solomon and Ade to deprive Plaintiffs of their rights as aforesaid.

Because Petrosky was a Village official at the time, Ms. Kane assumes Petrosky was acting in an official capacity when making the statements, acts and/or omissions in Count II. The Defendants assert that neither Plaintiff has identified any admissible evidence which tends to prove Petrosky misused her official power as a Village Board Member in order to effectuate any alleged acts and/or omissions against Plaintiffs. In response, the

5

Plaintiffs note that their depositions were taken before those of others in this case. The Defendants contend that the Plaintiffs did not ask Petrosky any questions to attempt to establish that Petrosky misused any power, possessed by virtue of law, or to establish that Stanley was able to act as alleged only because she was clothed with the authority of law. The Plaintiffs dispute this allegation by claiming that they specifically asked Ms. Petrosky whether she told anyone to take pictures of the Kanes' property.

The Plaintiffs have pled in Count III that Defendant Village of Southern View was guilty of the following acts and/or omissions:

> Acting under color of law and pursuant to policy, the Village knowingly, recklessly or with gross negligence failed to instruct, supervise, control and discipline Defendants Stanley and Petrosky in their duties as Trustees to refrain from unlawfully and maliciously harassing and invading the privacy of Plaintiffs, thereby violating their constitutional rights and privileges; conspiring to violate the rights and privileges guaranteed to Plaintiffs by the constitutional laws of the United States and otherwise depriving Plaintiffs of their constitutional and statutory rights and privileges.

> Defendant Village had knowledge or, had it deliberately exercised its duties to instruct, supervise and control its Trustees, Defendants Stanley and Petrosky, should have had knowledge of the unlawful acts of Defendants Stanley and Petrosky.

6

Defendant Village directly or indirectly, under color of law, approved and ratified unlawful, deliberate, malicious, reckless and wanton conduct of Defendants Stanley and Petrosky as aforesaid.

The Defendants assert that the Plaintiffs have no evidence to show the Village had or has a policy that, when enforced, caused Plaintiffs to be deprived of a federally protected right.[1]  Village President Matthew J. Lauterbach was not aware of any allegation that Petrosky told other Defendants to take pictures of the Plaintiffs' property until he read the police report regarding the alleged incident.  Moreover, he was not aware of any member of the Board of Trustees taking pictures or sending others to take pictures of the Plaintiffs' property.

Mr. Kane has suspicions, but does not have any facts to support, that prior to the election in April of 2005, a "village trustee, village official, or village employee" committed any acts and/or omissions to effectuate the harassment and/or invasion of privacy about which Plaintiffs complain.

[1]In response to this allegation the Plaintiffs state, "So as not to be redundant, Plaintiffs' dispute as to Defendant's paragraph 14[] will be supported and fully developed in Plaintiffs' Statement of Additional Material Facts and its argument hereunder."  However, the Plaintiffs' additional material facts do not specifically reference a policy.

Other than the names of Defendants Stanley and Petrosky themselves, the Plaintiffs have not pled the names of any Village employee or official who knew or should have known Defendants Stanley and Petrosky were about to act, or were acting, as alleged by Plaintiffs in Counts I and II.  They have no evidence that any Village employee or official knew or should have known this about those Defendants.

The Plaintiffs allege in Count IV a section 1983 claim against Defendants Walter Ade and Leroy Solomon for allegedly violating Plaintiffs' constitutional rights by acting under color of law in conspiracy with Defendant Petrosky by taking pictures of Plaintiffs' garage from a public vantage point.  Ade admits driving his car past Plaintiffs' residence on July 10, 2005.  Solomon was also in the car and took photographs of the residence.  There is no claim or evidence that Ade and Solomon entered onto Plaintiffs' property to take the photographs.  The Defendants contend that if even if Petrosky conspired with Ade and Solomon by asking them to take photographs of Plaintiffs' property (which they all deny), there is no evidence to suggest that Petrosky made such a request in her capacity as a

Village Board Member.

The Plaintiffs allege in Count V a section 1983 claim against Defendant Gray for allegedly violating Plaintiffs' constitutional rights on April 27, 2005, by acting under color of law in conspiring with Defendant Stanley by taking pictures of Plaintiffs' garage from a public vantage point. Stanley was sworn in as trustee at a Village Board meeting held on May 9, 2005. Because Stanley was not a sworn trustee until May 9, 2005, Stanley could not have misused her official power as a Village Board Member to conspire with Gray to effectuate the alleged April 27, 2005 acts and/or omissions against Plaintiffs. The Plaintiffs have no evidence that Stanley or Gray entered onto Plaintiffs' property.

In Count VI, the Plaintiffs assert a section 1983 claim against The V.O.I.C.E. for allegedly violating the Plaintiffs' constitutional rights under color of state law in conspiracy with all other Defendants. The Defendants contend that the Plaintiffs have not alleged specific actions taken by The V.O.I.C.E. that deprived them of any rights. In response, the Plaintiffs allege that the Defendants' use of the word "specific" is vague. Mr. Kane

9

believes The V.O.I.C.E. has violated his federally protected rights by paying Attorney Don Craven's legal fees. The Plaintiff admits that citizens of the Village have a right to organize and influence members of the Village Board. The Defendants contend that neither Plaintiff knows whether any acts and/or omissions done by members of The V.O.I.C.E. against Plaintiffs were done at the behest of a Village official while acting in his capacity as an official. In response, the Plaintiffs allege that while this accurately reflects the testimony in the Plaintiffs' depositions, there have since been other developments in the case.

The Defendants allege they are entitled to summary judgment on each of the Plaintiffs' claims. The Plaintiffs acknowledge that the facts do not support their state law claim for intentional infliction of emotional distress.

## II. DISCUSSION

The Defendants claim there are three reasons why they are entitled to summary judgment. First, they assert that Plaintiffs have no evidence any individual Defendant deprived them of a federally guaranteed right. Second, the Plaintiffs have no evidence that any individual Defendant acted

under color of law.  Third, regarding the Village's liability under section 1983, the Plaintiffs have no evidence of a municipal policy that caused their injury and a municipality cannot be held liable under section 1983 on a respondeat superior theory.

### A. Summary judgment standard

The entry of summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A "material fact" is a fact which may affect the outcome of the litigation, given the substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  "Rule 56(c) mandates the entry of judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  Celotex Corp., 477 U.S. at 322.  If a defendant can show the absence of some fact that the

plaintiff must prove at trial, then the plaintiff must produce evidence, and not merely restate his allegations, to show that a genuine issue exists. <u>Sartor v. Spherion Corp.</u>, 388 F.3d 275, 278 (7th Cir. 2004). The Court construes all facts and makes all reasonable inferences in favor of the non-moving party. <u>Magin v. Monsanto Co.</u>, 420 F.3d 679, 686 (7th Cir. 2005).

B. <u>Deprivation of a federally guaranteed right</u>

A plaintiff pursuing a claim under section 1983 must demonstrate that the defendant acted "under color of state law" and deprived him of a federally guaranteed right. <u>See</u> 42 U.S.C. § 1983; <u>see also</u> <u>Honaker v. Smith</u>, 256 F.3d 477, 484 (7th Cir. 2001). In arguing that the Plaintiffs' section 1983 claims fail against all Defendants because Plaintiffs cannot show they were deprived of a federally guaranteed right, the Defendants first assert that it is difficult to precisely determine the nature of the Plaintiffs' claims because of the very general allegations. The complaint makes reference to "the right to life, liberty and property; to be secure in their home; to the right and privacy [sic] and to be free from harassment." The Defendants note, however, that the Plaintiffs have since admitted they were

12

not deprived of a right to "life" in this case. Moreover, the Plaintiffs acknowledge in their discovery responses that they are "not alleging a constitutional right to be free from harassment."

The Defendants further allege that Plaintiffs have pled numerous acts and/or omissions that could not possibly have any bearing on their section 1983 claims. Some of the acts and/or omissions were not alleged to have been committed or influenced by a state actor. At least one of the acts is alleged to have been performed by Defendant Stanley, but on a date before she became an elected official. The Defendants also assert that some of the allegations appear to be duplicative of those in the Plaintiffs' state court litigation[2] concerning the denial of their request for a variance. The Plaintiffs claim that the Defendants have chosen to read their complaint in a vacuum, but it must be considered as a whole.

Specifically, the Defendants contend that Plaintiffs have no evidence to support a section 1983 claim based on a right to privacy. They note that Plaintiffs have argued:

---

[2]This is pending in the Circuit Court for the Seventh Judicial Circuit, Sangamon County, Illinois, in case number 2005-L-056.

As alleged in Plaintiffs' Complaint, STANLEY's conduct, *i.e.*, directing police officers to Plaintiffs' residence under the guise of a false Police Report and conspiring with GRAY to place Plaintiffs' home under surveillance cuts at the very fabric of the fundamental right to privacy in one's home. Furthermore, PETROSKY's activities in directing WALTER ADE . . . and LEROY SOLOMON . . . to Plaintiffs' home for purposes of placing said home under surveillance, once again, go to the fundamental right to be safe and undisturbed within one's home.

The Defendants assert that the Plaintiffs' allegations do not implicate a constitutional right to privacy. They note that courts have specified two main areas of constitutional privacy rights. See Roach v. City of Evansville, 111 F.3d 544, 550 (7th Cir. 1997). "First, an individual's right of privacy embodied in the Fourteenth Amendment protects an individual's interest in avoiding disclosure of personal matters and the right to make important decisions in the areas of marriage, procreation, contraception, family relationships and child rearing and education without the interference of government." Id. (citations omitted). Courts have also recognized "a certain zone of privacy or expectation of privacy in the Fourth Amendment search and seizure context." Id.

The Defendants state that the Plaintiffs are claiming an invasion of

14

privacy because some Defendants viewed and photographed–from a public street–activities taking place on the Plaintiffs' property.  Moreover, the Plaintiffs claim an invasion of privacy because Defendant Stanley made an allegedly false police report, which resulted in the Plaintiffs being interviewed by police officers.  However, the police investigation did not result in an arrest or criminal charges.  Because these allegations do not implicate the constitutional right to privacy as described in <u>Roach</u>, the Defendants assert that they are entitled to summary judgment to the extent that Plaintiffs are pursuing any section 1983 claims purportedly based upon their constitutional right to privacy.

It is unclear whether the Plaintiffs continue to pursue a constitutional right to be free from harassment.  Although the Plaintiffs mention in their complaint a right to be free from harassment and they argued in response to a motion to dismiss that the harassment by certain Defendants amounts to a "continuous constitutional deprivation," the Defendants claim that the Plaintiffs served a discovery response which expressly says that they "are not alleging a right to be free from harassment."  The Defendants contend that,

to the extent that Plaintiffs are asserting that Defendants deprived them of a purported right to be free from harassment, the Plaintiffs have failed to plead any theory or develop any evidence to support such a claim. Additionally, the Defendants allege that Plaintiffs cannot expect privacy from individuals watching and photographing activities on Plaintiffs' property when such activities are plainly visible from public streets.  The Defendants argue, therefore, that because the Plaintiffs' evidence will not support a section 1983 claim based on a right to privacy or a "right to be free from harassment," they are entitled to summary judgment as to any section 1983 claim based on those allegations.

Based on the Plaintiffs' response to the motion for summary judgment, it appears that they are now alleging primarily violations of their right to liberty and property.  To the extent that the Plaintiffs continue to maintain claims based on a right to privacy or a right to be free from harassment,[3] the Court concludes that the Defendants are entitled to summary judgment on those claims.

---

[3]It appears that the only mention of these rights in the Plaintiffs' response is a reference to the applicable language in paragraph 38 of the complaint.

The Defendants next assert that if the Plaintiffs are alleging they were deprived of equal protection under the law, they have no evidence in support of a section 1983 claim on that theory. Although the complaint includes an allegation that Plaintiffs were denied equal protection under the law, the Defendants argue that Plaintiffs have failed to establish that any Defendant's conduct deprived them of equal protection. The Plaintiffs do not respond to the Defendants' argument concerning equal protection. To the extent that the Plaintiffs are pursuing a claim that they were deprived of equal protection under the law, therefore, the Court concludes the Defendants are entitled to summary judgment on that claim.

C. Acting under color of law

The Defendants next contend that the Plaintiffs' section 1983 claims against them fail because Plaintiffs have no evidence to establish that any Defendant was acting under color of law. They note that "acting under color of state law" means to "misuse [] power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." See Honaker, 256 F.3d at 484 (internal quotations

17

omitted).  Individual acts that are unrelated to the officer's performance of the duties of office are not made "under color of law."  See id.  The Defendants assert that Plaintiffs have no evidence that any alleged act and/or omission was related to the performance of the official duties of any state/municipal actor.  Moreover, they have no evidence that an act or omission was made possible only because the actor was clothed with the authority of state/municipal law.  The Defendants claim that other than the Plaintiffs' beliefs and suspicions, Plaintiffs have no proof to show that any individual Defendant acted under color of law by acting in some way related to the performance of his official duties.

The Defendants allege that as for Count I, the Plaintiffs have no evidence to show that Defendant Stanley used her municipal position to effectuate the June 1, 2005, police investigation.  Regarding Count II, the Plaintiffs have no evidence to show Defendant Petrosky used her municipal position to effectuate the July 10, 2005 drive-by photography by Defendants Ade and Solomon.  The Defendants claim there is no evidence either Defendant had a duty—as a Village trustee, as opposed to an ordinary

citizen–to report to the police regarding suspect activity taking place on the Plaintiffs' property.   As for Count IV, the Defendants maintain that Plaintiffs have no evidence to show Defendants Ade and Solomon were encouraged by, or that they conspired with, Defendant Petrosky because she misused the power she possessed by virtue of her position as a Village trustee.  Moreover, there is no evidence that Petrosky had a duty, or the authority, as a Village trustee to direct other citizens to gather evidence regarding suspect activity taking place on the Plaintiffs' property.

The Defendants further claim that regarding Count V, Stanley could not have used her municipal position to conspire with, and/or direct, Defendant Gray to take pictures of Plaintiffs' garage from a public vantage point on April 27, 2005, because Stanley was not sworn in as a trustee until May 9, 2005.  As for Count VI, the Plaintiffs have no knowledge whether any acts and/or omissions done by members of The V.O.I.C.E. against the Plaintiffs were done at the behest of a Village official while acting as an official.  The Defendants allege that even if the Plaintiffs did have such knowledge, there is no proof that Village officials had the legal authority to

19

direct the activities of members of The V.O.I.C.E. The Defendants contend that Plaintiffs cannot prove that Stanley or Petrosky, the only two state actors named in this case, acted "under color of law." It follows that they have no evidence that those Defendants conspired, "under color of law," with the other individual Defendants. The Defendants contend, therefore, that the Court should grant summary judgment to the individual Defendants on all of the Plaintiffs' claims.

In their alleged undisputed material facts, the Defendants assert that neither Plaintiff has pointed to evidence tending to show that Stanley misused her official power as a Village Board member in order to effectuate any alleged acts and/or omissions against the Plaintiffs. The Defendants claim that the same is true as to Petrosky. The Plaintiffs respond to each of those assertions in the same fashion–the allegations accurately reflect the Plaintiffs' deposition testimony at the time of the deposition; however, their depositions were taken prior to the depositions of the Defendants and other parties and prior to the production of documents of the Defendants. The Plaintiffs do not say how these later developments potentially show that

20

either Defendant misused her official power, thereby establishing that they acted "under color of law." The Defendants also allege that the Plaintiffs have no evidence to prove that Stanley or Petrosky have greater authority than any ordinary citizen to make statements to the police or ask/direct other citizens to take photographs within the Village while enforcing civil injunctions.

At this stage, the Plaintiffs have the burden of producing evidence which creates a genuine issue of material fact that their liberty and/or property rights have been violated. Without providing a specific citation to the record the Plaintiffs allege, "It is clear from the depositions and documentary evidence that Defendants, Stanley and Gray[,] formed a group of individuals in opposition to the construction of a garage on Plaintiffs' property at 3133 Carman." The Plaintiffs proceed to elaborate on that theory without providing any support in the record.

In their reply brief, the Defendants claim that this is a new theory articulated by the Plaintiffs–the Defendants banded together, filed suit, won an election and passed an ordinance amendment, all in opposition to the

Plaintiffs' pole barn and/or neighborhood auto repair business.   The Defendants contend that even if the Plaintiffs' theory is properly before the Court, they have failed to show how this conduct caused the deprivation of their federally protected rights, or how the Defendants were acting "under color of law."  The Plaintiffs have offered no evidence (other than their own speculation) that Stanley and Petrosky violated their liberty and property rights or that those Defendants were acting "under color of law," instead of as private individuals.  Because the Plaintiffs have failed to create a genuine issue of material fact on these points, the Defendants are entitled to summary judgment on the section 1983 claims against the individual Defendants, including those claims in which the Plaintiffs allege that other Defendants were conspiring with Stanley and/or Petrosky.[4]

The V.O.I.C.E. is also entitled to summary judgment as to Count VI because, even when the allegations are viewed in their favor, the Plaintiffs

---

[4]To the extent that the Plaintiffs are now asserting, moreover, that certain Defendants passed an ordinance amendment upon their election, it does appear that such activity constitutes political activity which is protected by the "Noerr-Pennington" doctrine, as argued by the Defendants.  See Tarpley v. Keister, 188 F.3d 788, 793-97 (7th Cir. 1999).

have not pointed to specific actions that deprived them of any rights.  The
Plaintiffs allege only that The V.O.I.C.E. conspired with all other
Defendants to deny Plaintiffs their rights and privileges under the
Constitution.

### D. Municipal policy

The Defendants next contend that the Village of Southern View is
entitled to summary judgment on the Plaintiffs' section 1983 claim because
the Plaintiffs have no evidence of a municipal policy that caused their injury
and a municipality cannot be held liable on a respondeat superior theory.
"To state a claim against a municipality under § 1983, a plaintiff must
identify a municipal policy or custom that caused the injury." Pourghoraishi
v. Flying J, Inc., 449 F.3d 751, 765 (7th Cir. 2006) (citations omitted).

The Defendants assert that Plaintiffs are unable to show that any
individual Defendant was acting in furtherance of a municipal policy.  The
Defendants further allege that although the Plaintiffs claim that the Village
failed to "instruct, supervise and control its Trustees," the Village is not
liable for an employee's constitutional tort.  They assert, therefore, that the

23

Village is entitled to summary judgment on Count III of the complaint.

In their response brief the Plaintiffs state, "The allegations of Plaintiffs' Complaint and the evidence adduced thus far, point to the inevitable conclusion that the Village of Southern View had adopted a policy or custom to deprive Plaintiffs of their fundamental rights of liberty and property and such policy or custom was implemented by Defendants, Stanley and Petrosky, acting in conspiracy with Defendants, Ade, Solomon, Gray and The V.O.I.C.E." They later say, "In effect, the policy or custom of the individual Defendants Gray and Stanley became the policy or custom of The V.O.I.C.E. and its members, Stanley, Petrosky, Gray, Ade and Solomon which in turn became the policy or custom of the Village of Southern View through its trustees, Defendants Stanley, Petrosky and the two other elected trustees who are also members of The V.O.I.C.E." In addition to these conclusory assertions, the Plaintiffs recite several facts which they contend show the presence of a municipal policy or custom.

To establish municipal liability under Section 1983, the Plaintiffs must establish:

24

> (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a "custom or usage" with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority.

McGreal v. Ostrov, 368 F.3d 657, 684 (7th Cir. 2004) (citations omitted). The Plaintiffs do not specifically say how they purport to show the presence of a policy. As the Defendants note, moreover, the Plaintiffs do not point to an express policy and do not claim that an individual with final policymaking authority was involved in the conduct described. The Plaintiffs do not allege that the actions of Stanley and Petrosky constituted a widespread practice that was established to such an extent so as to be a "custom or usage" with the force of law. The Defendants correctly allege that a significant amount of the conduct described by the Plaintiffs occurred before any individual Defendant became a Village official. Accordingly, it is difficult to see how the conduct could amount to a widespread practice.

Based on the foregoing, the Court concludes that the Plaintiffs have failed to establish municipal liability under section 1983. Accordingly, the

Village is entitled to summary judgment on Count III.

## III. CONCLUSION

The Court previously stated that the Plaintiffs acknowledged they do not have a viable claim for infliction of emotional distress.  Therefore, summary judgment is appropriate as to Count VII.  After considering the evidence in the light most favorable to the Plaintiffs, the Court further concludes that the Defendants are also entitled to summary judgment on the other claims.

Ergo, the Defendants' joint motion for summary judgment [d/e 80] is ALLOWED.  The Clerk will enter judgment in favor of the Defendants and against the Plaintiffs.  This case is closed.

IT IS SO ORDERED.

ENTER: July 27, 2007

FOR THE COURT:

s/Richard Mills
United States District Judge

26